We will give just a moment for the Council to get adjusted in vehicles. We will wait just one moment until everybody is seated. We are ready to begin. We will hear first from Ms. Sears. Thank you. May it please the Court, I am Leah Sears. My law partner, Tony Cochran, and I represent the Silver Comet Companies. We are going to be splitting our time here this morning. This is an appeal from a grant of summary judgment and a four-day bench trial up in Rome, Georgia. Your Honors, this case should be reversed and a new trial should be granted for a number of reasons, but today we'd like to discuss just two issues. We'll stand on our brief as to the others, and, of course, if you have any questions you'd like to ask us on any of the other issues, we'd be more than happy to address them. Now, as you know, this case is about a risky attempt to bring a second airport to the Atlanta area, and the parties express agreements on allocating that risk. The primary issue I'd like to address today is the scope of the indemnification agreement the parties entered into. Now, we contend the trial court wrongly granted summary judgment to the Paulding County Airport Authority on our indemnification claim in two significant ways. First, the trial court wrongly decided that the Silver Comet couldn't be reimbursed for its own expenses simply because the parent company cut the check. Can I ask you a question about how that works? I mean, it's not clear to me. I don't really understand. I see that Propeller paid the bills. The liability seems to be booked to Silver Comet. Is it in the record as to how that happens to be? Has Silver Comet paid Propeller to pay the expenses? How does that work? No, Propeller pays the expenses. My understanding is that Propeller pays the expenses of Silver Comet and then uses an accounting entry to allocate those expenses to its subsidiary. It's a fairly common thing, and that doesn't change the fact that under the indemnification agreement, Your Honor, the indemnification agreement says any and all expenses are to be reimbursed. It doesn't matter who paid the expenses. If I paid the expenses, they're still the expenses of Silver Comet. This is an agreement that's governed by Georgia law, correct? Correct. And under Georgia law, aren't indemnification contracts narrowly construed? Yes. But even if you narrowly construe, I mean, it is a contract, and even if you narrowly construe this contract, I'll just read you the language. I know you have it before you. It says any and all claims Right, but why don't we read from the beginning where it says landlord will indemnify tenant. Landlord will indemnify tenant. And under the contract, who is the tenant? Isn't the tenant specifically defined as Silver Comet? That's correct. Okay, and then if you go on a little, it says any and all claims, actions, damages, liabilities, and expenses. So that would be expenses of tenant. Language of the contract specifically says you're indemnifying the tenant for any and all claims. Liabilities, actions, damages, and expenses in connection with So your position is that it doesn't matter who paid the bill because the language in the contract says we'll indemnify for any liabilities. And there's, well Okay. Liabilities. Right. And there's no question on the record that your client has been billed with a liability, I guess, if you will, or charged with a liability on its books. Is that what your position is? My position is, yes, close to it. My position is, what I'm trying to present to you is that the tenant's expenses are the tenant's expenses regardless of who pays. But for example, if a kid goes to college, they have expenses. I think we understand that as a practical matter, it may well have been Silver Comet's expense. I think what you're being asked about is because of the strict construction that Georgia places on indemnification provisions is, you know, that's where there's an issue. Because you could have written it, the two of you could have entered a contract to define tenant as propeller and its subsidiaries. Right. And that would have taken care of this problem. Maybe it doesn't matter because it does say liabilities and the record is clear that your client has been charged with a liability for it. I don't know whether that makes a difference. Let me ask it to you this way. Do you have any case law that you can cite to us for the position that an indemnification provision applies in the situation we have here? The only case law that we have is the case law that we've already cited to you in our briefs, which is the two IRS cases and the odd Sixth Circuit case that stands on a little different factual footing. Because it was clear the subsidiary was put in the document and then removed from the document. So it's really not on point. But that's all that we could find, Your Honors. All right. Thank you, Counsel. Okay. We'll hear next from Mr. Cochran. Thank you, Your Honors. I'm Tony Cochran. And following up on Ms. Sears, I believe if you look at the cases that were cited for whether or not an indemnification is construed narrowly in Georgia, it's when you're being indemnified against your own negligence. That's not the case here. So I think those cases are distinguished. I think both sides agree that otherwise indemnifications are construed like any other contract. And so this indemnification provision should be construed as written and as argued by Ms. Sears. But isn't really the issue whether an indemnity can be indemnified by the indemnitor when they've already been indemnified by somebody else? They haven't been. It's still their liability. These are two separate companies, right? Propeller. Correct. I mean, they may be parent subsidiary, but they're two separate legal entities. And you're either going to have an intercompany loan or you're going to have a capital contribution. Do we have any evidence of that here? No, there's no evidence of that. And so isn't that a problem? Well, you do have, and what the trial court focused on was the accounting records that clearly show the allocation of these expenses to Silver Comet Terminal Partners. That's in the record. Why does that matter? I mean, I guess it seems to me that we're looking at a separate entity, the tenant, Silver Comet, and it may have something on its books saying something. It didn't have any money going out of its account. Well, it's similar to the hypothetical I think Ms. Sears was giving you, which is it's like a child goes to college. They have an obligation. The parent may pay the expense, but it's the child's expense. How they divvy it up between themselves is immaterial. But if I promise, though, I'm a benefactor and I say I want to make sure this child goes to college, they have this parent-child relationship, I say I will take care of your bills for college, but it comes to find out that Mommy and Daddy already paid it, can the child then come to me and say I want you to give me the money you promised to give me even though it's already been paid? That doesn't change the fact that it's the child's liability. That's the key here. That's the key. It is... But how do you get around the fact that it says landlord shall indemnify tenant and tenant is specifically defined? But you want us to treat this like a contract, right? Right. Okay, I'm going to treat it like a contract. Well, I'm not going to add a word to it. I'm not going to add a propeller to it. I'm only going to add what it is, which is tenant. So how do you get around that then? Because those expenses are in fact Silver Comet Terminal Partner Expenses. Then you could have included the words tenant and or parent company or holding companies. But the intent of this was to indemnify... Intent is irrelevant. In fact, I'm going to treat this like a contract. The contract is written. There's no ambiguity, correct? That's correct. I mean, it seems to me like maybe your best argument is that the contract lists out expenses, dah, dah, dah, dah, dah, dah, dah, whatever, liabilities. That's right. Right. So how would you characterize the accounting entries, I guess, for Silver Comet? It would in effect be a liability. If you're going to take into account the ministerial payment of the debt by the parent, then there's a liability from the subsidiary back to the parent. It seems to me, I mean, that's your best argument because these expenses have been paid by somebody else. They've already been indemnified for the expenses. And so it seems to me your best argument is to say this is a liability that the airport authority agreed to indemnify the tenant for. But the only reason this liability was created was for some accounting purposes. It's not a liability that was created through some sort of conduct that they've got some liability to third parties. And it just seems odd to me that the parties would have contracted to indemnify somebody for an accounting entry. They didn't indemnify them for the accounting entry. The expenses that were incurred were incurred by Silver Comet Terminal Partners. It is their expense for which they are seeking to be indemnified. Okay. All right. Thank you. Now let me transition in the time that I have remaining. I want to talk about one of the expenses for which we seek the indemnification. And that's the attorney's fees that were incurred when Silver Comet Terminal Partners intervened in a separate lawsuit. Now, the indemnity says it's an indemnification in connection with the application for the certification that you need from the FAA. The lawsuit that Paulding County filed against the airport authority was in connection with that certification because they said you, the authority, do not have the legal authority to make this certification. So when Silver Comet intervened in that lawsuit, first of all, it could only intervene if its interests were not adequately represented. Number two, the authority consented to the intervention so that any expense that was incurred there is foreseeable. And it's any and all expenses, which is very inclusive. It's very broadly worded. The problem you've got there, as I understand Georgia law, it requires you to specifically use the word attorney fees, that any and all expenses, while in some abstract world would presumably include attorney fees, Georgia law specifically requires those words to be used or they won't infer that any and all includes attorney fees. Isn't that, is that a fair statement in Georgia law? Except here, you've got two different provisions. You've got one attorney's fee provision in Section 26 of the agreement that deals with attorney's fees, but it's disputes between the landlord and the tenant. So here, these are not, this is not a dispute. In fact, we were on the same side as the authority in that other litigation. What we are saying is that these expenses, which we were consented to our intervention, were foreseeable and their damages, which they are under Georgia law. But paragraph 26 says, if either party is required to take action in order to enforce any agreement or covenant under this lease, each party shall pay their own attorney's fees, right? And you have the paragraph 35, which is the entire agreement language, which this constitutes the entire agreement between the parties regarding this particular agreement. That's correct. And what you just read is for a dispute between the landlord and the tenant. Can I ask you a question? Because I'd like to go back to the indemnification. In the indemnification where it talks about the landlord will indemnify tenant, under paragraph 33 and paragraph 28, Silver Comet had the ability to assign this agreement. That's correct. And here in place to propeller? None. All right. Thank you, Your Honor. Mr. Carter. Good morning, and may it please the Court. My name is Lee Carter, and I represent the Paulding County Airport Authority. This case is about developing an airport. And Silver Comet agreed to do that under two separate contracts back in 2012. These were distinct and independent contracts that they signed. But by 2018, things had changed. And Silver Comet had shifted its energies, its interests, and its monies to other projects. And while there may have been business reasons to do that based on the opposition to commercial passenger service, those decisions had consequences. It allowed the authority to terminate. The authority could not. Sorry. I want to get to the indemnification issue, if you don't mind. Why isn't use of the word liabilities sufficient to encompass the charge on the books of Silver Comet? Well, you've got to read, number one, the indemnification as a part of the whole contract. And you have to read it under Georgia law. And as you all correctly commented earlier, it has to be constricted strictly and against indemnification. And the presumption has to be against an intention to Stop that. Yes, Your Honor. So I'm asking you, why doesn't an accounting entry in the books of Silver Comet qualify as a liability? Well, that was a liability to its parent as opposed to a liability in connection with the The difference doesn't make. The liability has to be. It says liabilities for expenses, right? The full language is, I mean, it's a litany of claims, liabilities, and expenses. Can I ask you a question? If Silver Comet had assigned its rights under this agreement to Propeller, would you say that Propeller would have had the right then to seek indemnification? I think they could. They could have done it a number of ways, Your Honor. They could have assigned the contract and become the beneficiary. Because the contract does allow for that. It does. It does. And they could have also negotiated a more comprehensive risk allocation under the indemnification. They could have added words to this indemnification. They could have included the phrase attorney's fees. That's important because under Georgia law, that phrase has to be included for those attorney's fees to be recoverable. The same thing with tenant. Even if they didn't assign it, they could have said, and all affiliated entities such as Propeller. Again, not included in the indemnification. I understand that. But not all agreements give the tenant the right to assign an agreement, and here it does. Correct. And so really, as I mentioned, with the indemnification, what Silver Comet is pointing the court to are federal decisions, none of which apply Georgia law. Specifically, I'd like to point the court to footnote 17 in the Dawson Associates. I'm sorry. Can we go back for a moment to the indemnification provision? What language are you relying on in the indemnification provision that the liability that is charged to Silver Comet does not qualify for indemnification? Well, first, they've never claimed that it was a liability before today. They've always contended that this was an expense. And then at summary judgment, they pivoted to claim that attorney's fees were damages. So that's point number one. And then point number two is that this is a liability to a parent. What this contemplates is— I understand. I understand what you're saying as far as that goes. But is the language not broad enough to encompass a liability to a parent if the liability is for an expense that qualifies? Not when reading the contract. And what's the language that you rely on to reach that conclusion? I think we have to take a step back and look at the entirety of Section 9. In Section 9, that talks about Part 139 of certification. And what it does is Silver Comet can ask the authority to go and apply and then use its best efforts to get certification. It makes sense for the authority to do that as a co-sponsor of the airport. The airport is the authority's job. The terminal building is what Silver Comet is concerned with. Commercial passenger service is what Silver Comet is concerned with. But if there is some sort of spillover expense related to the application process— but that hasn't happened here, Your Honor. There is no spillover expense. The one time where there was the potential for a spillover expense was in 2018, where the authority went to Silver Comet and said the FAA is requiring this specific analysis under 4F. And our grants don't allow—do not pay for that analysis. Will you come and help us and will you pay for that? And they said they would look at it and revert back, I think is the language in the email. It never did. And the FAA closed the Part 139 file. Had they borne that expense, that is a good example of where the identification would apply. Could you give an example of when that 139 process could have created liability on Silver Comet's behalf? Well, if the—so the county did sue the authority and it was contesting its ability to file the application. Had the county also named Silver Comet in that lawsuit, then that is a potential way that it could have been triggered. But the county did not name Silver Comet. Silver Comet intervened on its own behalf to protect its interests. It intervened to pursue a damages claim against the county. Bill faded, but— To be fair on that point, though, to be fair, they intervened with your consent. And so while normally I would not be particularly sympathetic to somebody who incurs attorney fees voluntarily injecting themselves into other litigation, here, given the relationship and given your consent, it would seem like—but for the attorney fee issue, which I don't know if they can overcome, I'm a little hard-pressed to see how you're arguing that that intervention would somehow bar them from getting the benefit of this, because it was certainly in connection with this project. Well, it was in connection with the project. There's an open question as to whether it fits within the strict language of the indemnification if it was in connection with the application itself. Remember, this application was submitted in 2013, and Part 139 of the federal regs requires certain things to go along with that application, like an airport compliance manual, like an environmental assessment. Those are the types of things that should Silver Comet bear expenses related to those required items. Then, yes, there may be a trigger. It has to be viewed under that narrow lens. I understand. All right. I'd now like to move to what the trial court had a four-day trial on, and that accepted 90 exhibits into evidence. And that's about the termination of the lease option agreement and then the termination of the airport use agreement. The lease option agreement is all about developing 60 acres at the airport. It was Silver Comet's job to market and attract tenants. So think light industrial manufacturing. Think maintenance and repair facilities. Think of an entrepreneur building hangers. That's the type of development that was contemplated. If it did, Silver Comet could exercise its option and lease those properties and then develop them, theoretically make money on those developments. So there's no dispute that a termination provision exists in the airport use agreement, and there's no dispute that the authority put Silver Comet on notice. What the trial court decided was whether 21 months after that notice, if the authority had reasonable and good faith basis to terminate. And as the district court found, it did for a number of reasons. And first, there was only one written response into the notice, and that occurred about eight days after the notice was sent. The response did not dispute the authority's contention, and no other letter or email was ever sent to the authority about marketing. This stands in distinct contrast to how Silver Comet communicated previously with the authority's prior director. Mr. Blake Swofford testified that he was informed of at least 30 to 40 companies that were shared with them. Second, the limited oral communication between the parties did not put the authority on notice either. And those are really boiled down to three events. The first was the December 2017 authority meeting. No details were provided there. There's no contention that they were. And it's important to note the timing. This was 12 months after notice. This was the point at which the authority could terminate, but the authority did not. It was not in a rush to terminate. It wanted Silver Comet to live up to its contractual obligations. It wanted it to market these properties for development, so it gave it 30 extra days to show what are you doing. And so two lunch meetings occurred after that, and they were with Mr. Tibbetts, the airport authority's CEO and director, and then a gentleman by the name of Gil Morgan, a Silver Comet representative. There's no dispute that Mr. Morgan was not involved and had no personal knowledge about any marketing. Instead, the only thing that he could provide was a PowerPoint, a three-slide PowerPoint that Mr. Brett Smith had given to him. And Silver Comet relies heavily on this PowerPoint. And the fact that Mr. Tibbetts did not take it with him and the fact that Mr. Tibbetts did not tell the authority about it, but they're wrong, and here's why. The PowerPoint provided nothing new. It provided no details. It was simply a summary of everything that had been spent. We're not talking about marketing the option property, despite that being the issue at the authority's meeting. We're talking about their entire investment at the airport is what is reflected or intended to be reflected in this PowerPoint. And ultimately, on all of these arguments you're making, there was a factual dispute that the trial court had to resolve or district court had to resolve at a bench trial, which we then have to review under a clearly erroneous standard? It's a clear error of standard, Your Honor. Exactly, exactly. The definitions of what good faith is and what reasonable is is a legal conclusion, and then the application of that law to fact would be a finding of fact that the trial court made on because it was a bench trial. And so this PowerPoint provided nothing new, and that's what Mr. Morgan told, or Mr. Tibbetts, excuse me, told Mr. Morgan is, look, we need details. We need the who, the what, the when, the how, and nothing was ever provided. And we made that request three times. We made it in the notice. We made it at the December meeting, and then we made it at the January 2018 lunch meeting. And no details were ever provided, and so we submit that its decision was reasonable in good faith to terminate. The last point I want to address is the termination of the airport use agreement. Here, airport use is really all about the lease of the terminal building to accommodate commercial passenger service. Silver Comet Terminal Partners initially leased about 700 square feet of office space. It had the right to expand to about 18,000 square feet of office space, and that would be done in connection with commercial passenger service. And this issue, if I understand it, ultimately boils down to whether the communication they made that said we intend to exercise actually constitutes an exercise, right? That's exactly right, Your Honor. They contend that written notice was enough and that notice barred the authority from terminating, even if Silver Comet refused to sign a lease and even if they refused to pay rent. Silver Comet wants to preserve its option without actually performing, and the district court rightly disagreed with this interpretation after hearing the testimony over four days and accepting and reviewing the exhibits. And I want to point the court to Mr. Smith, and this is the CEO of Silver Comet. He testified at trial, quote, there was no reason to lease the entire terminal building until commercial service was going to start. So why would Silver Comet say it intends to lease the entire terminal building just after it found out that the FAA had closed its Part 139 file? The whole process had to start over again. It would be years before commercial passenger service could exist. So we have to question, and I believe the trial court did, the claimed desire to lease the terminal building at the exact time when it knew commercial passenger service would not exist for years to come. And on the other side, you have to look at what the authority did. It did everything to accommodate Silver Comet. It prepared a draft amendment. It was about a one-page amendment at Silver Comet's request. It made every revision that Silver Comet asked for. The only thing that the airport authority insisted upon was that you sign the amendment and that you sign it by December 1st and that you start paying rent by December 1st. If you do not do that, we're going to consider terminating. And that's exactly what they did, and we believe that they were contractually allowed to do that. And we'd ask the court to affirm the decisions of the trial court. Thank you. Thank you, counsel. All right, Mr. Cochran, you have reserved three minutes. Thank you, Your Honor. I want to go back to the indemnification issue. The authority's position is that if there was, during this application process, any spillover expense, that it would be encompassed within that language, which is very broad. Any and all claims, actions, damages, liability, and expense in connection with their application for the certification. Any and all, very broad. In connection with, it sweeps in all these expenses. There's no qualifying language in there. Now, let me focus on when it talks about indemnifying tenant. There is qualifying language other than shall indemnify and hold tenant harmless. Right. That's the qualifying language from and against any and all claims. So who you're indemnifying is the tenant. Correct. And this is just like this. The reason we brought the IRS regulations to your attention, this is like a third-party administrator paying the salaries for a company. This agreement has the ability to assign this agreement to another party. But all the obligations here. You don't even need the landlord's permission to do it. I mean, that's in the provision, and there is no assignment of the lease agreement by the tenant to propeller. But there is no qualifying language here that says that somebody else can't pay the expense of the tenant. As long as it's the expense of the tenant, it's covered by this language as written. You keep bouncing back and forth between expenses and liability. Your opponent suggested that today is the first time that you focused on the word liability as a basis for this accounting entry being indemnified. Is that correct? It seems to be, based upon my reading of the briefs. We have always relied on Section 9. Now, you have to put this in context. Here's what happened. This was on a motion for summary judgment. We put in the accounting entry, which was not challenged, showing this is, in fact, an expense of Silver Comet Terminal Partners. Summary judgment got granted. Nothing like this came up at the trial. The trial judge then later said, I do want you to put in the evidence at trial, all these expenses. I'm sorry to interrupt, but let me see if I can speed this up. Is your argument that the issue is whether the indemnification clause covers this? And under our case law, you can't raise new issues, but you can raise new arguments. Correct. All right. But, again, on that point, though, the first time you made the argument that these expenses really should be indemnified because it meets the word liability is today. Is that fair? That's specifically yes. We have always relied on Section 9 and the entire wording of Section 9, which includes that word. Understood. Okay. Now, one thing I want to address is on the termination of the terminal lease. I'm sorry, but your time is running. Okay. All right. Thank you, counsel. We appreciate the argument, and we are going to take a ten-minute break before the next argument. So we'll be back in ten minutes.